UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

CHESTER SANDERS,                                  :

                              Petitioner,        :        **REPORT AND**
                                                          **RECOMMENDATION**
              - against -                        :        **TO THE HONORABLE**
                                                          **SHIRA A. SCHEINDLIN**
FRANK TRACY, Superintendent,                     :
Downstate Correctional Facility                           03 Civ. 6324 (SAS)(FM)
                                                 :
                              Respondent.        :
----------------------------------------------------------x

**FRANK MAAS,** United States Magistrate Judge.

1.    Introduction

          Petitioner Chester Sanders ("Sanders") brings this pro se habeas corpus

petition pursuant to 28 U.S.C. § 2254 to challenge his conviction in Supreme Court,

Bronx County, on two counts of Assault in the First Degree, following a jury trial.  (See

Pet. ¶¶ 1, 5).  On July 26, 1999, Acting Justice Barbara F. Newman, before whom the

case was tried, sentenced Sanders to concurrent indeterminate terms of twelve and one-

half to twenty-five years in jail.  (Id. ¶¶ 3-4).

          In his petition, Sanders alleges that he was denied effective assistance of

counsel in violation of the Sixth Amendment because his trial counsel prevented him from

testifying.  (Id. ¶ 13).  For the reasons that follow, Sanders' habeas petition should be

denied.  Additionally, pursuant to 28 U.S.C. § 2253(c)(2), Sanders should be denied a

certificate of appealability because he has failed to make a substantial showing of the denial of a constitutional right.

## II.    Background

### A.    Trial

The proof at trial would have permitted a reasonable juror to find as follows:

#### 1.    People's Case

On the evening of April 15, 1997, Sanders was smoking crack and drinking alcohol, along with James Isaac ("Isaac"), Isaac's friend Marcus, and Tanya Anderson ("Anderson") at Anderson's apartment in a housing project in the Bronx.  (Tr. 43, 45, 47-49, 157).[1]  Several hours later, during the early morning hours of April 16, 1997, Isaac invited the others to go out for drinks because he was leaving for Florida the next day.  (Id. at 54-55).  Isaac then left a $100 bill on the bed, which was intended to compensate Sanders for staying behind to look after Anderson's son, Antoine.  (Id. at 55, 184, 186).  Sanders threw the money back, however, telling Isaac, "I don't want the money."  (Id. at 55, 57, 185-86).

Shortly thereafter, Isaac walked into the bathroom, and Sanders and Anderson returned to the kitchen.  (Id. at 56, 58).  According to Isaac, at some point, Sanders entered the bathroom and proceeded to stab him in both his back and his right eye.

_____

[1]  "Tr." refers to the trial transcript; "S." refers to the minutes of the sentencing on July 26, 1999.

2

(Id. at 58-60, 69-71). After telling Isaac, "I'm going to kill you. You disrespect [sic] me," Sanders also made an unsuccessful attempt to stab him in the chest. (Id. at 59-61). Shortly thereafter, Isaac and Marcus were able to grab Sanders' hands and stop the attack. (Id. at 61-62). As they were doing so, Sanders warned Marcus that if he did not let go of Sanders' hands, "he would be next." (Id. at 449).

At trial, Anderson testified to a slightly different version of the facts. As she explained, while everyone was playing a game, Sanders excused himself from the bedroom. (Id. at 433). When he returned, Sanders said "Excuse me" and Anderson moved to the side. (Id. at 435). Sanders then began stabbing Isaac, who was sitting in a chair in the bedroom. (Id.).

Eventually, Isaac and Anderson ran out of the apartment and went to a Housing Police office in an adjacent building. (Id. at 62, 66, 170, 437). A little while later, Sanders was arrested on the street near Anderson's apartment. (Id. at 255-66). At the time of his arrest, Sanders had blood on his left hand. (Id. at 264). Once he was handcuffed and placed in a patrol car, Sanders stated, "I don't know where the knife is, I just ran out of there." (Id. at 266-68). A steak knife used in the attack subsequently was recovered from a stairwell in Anderson's building. (See id. at 86, 282-87, 456).

2.    Defense Case

Sanders did not testify at trial. The defense case consequently consisted of only one witness, Police Officer Francis Pittone ("Pittone"). Pittone evidently was called

to establish a conflict between his testimony and that of a supervisory police official who testified that Pittone had been sent to Anderson's apartment to secure the scene. (Id. at 806, 820, 1021). Pittone also testified that he mopped up a considerable amount of blood at a police facility on the night Isaac was stabbed. (Id. at 891-96). Additionally, the defense introduced two certificates of disposition relating to Anderson and a stipulation that the knife recovered at the scene was removed from its sealed package in court prior to the trial. (Id. at 991-92). The certificates of disposition established that Anderson had two prior convictions related to cocaine, not simply one for marijuana possession, as she had testified. (See id. at 430, 480, 1048-50).

C.    Conviction and Sentencing

On July 1, 1999, the jury found Sanders guilty on two counts of Assault in the First Degree. (Id. at 1199). The jury was unable to reach a verdict on the remaining count submitted for its consideration, Attempted Murder in the First Degree, which thereafter was dismissed on the prosecutor's motion. (Id. at 1199-1202).

On July 26, 2999, Justice Newman sentenced Sanders to concurrent indeterminate prison terms of twelve and one-half to twenty-five years. (S. 13). Prior to the imposition of sentence, Sanders' trial counsel, Robert Reyes, Esq. ("Reyes"), stated, in part, as follows:

Your Honor, I think that your function as the
sentencing judge for Mr. Sanders is a difficult one and perhaps
I see it differently than the prosecutor and yourself because I
feel somewhat to blame for Mr. Sanders' decision not to
testify. And had he done so perhaps the result would have
been different and I think that's an unavoidable consequence
of being defense counsel[:] you make a decision and you must
live with it for better or worse.

Mr. Sanders' life is unalterably affected by my
strenuous recommendation to him to not testify. . . .

Mr. Sanders has always told me that he had a defense that he
wanted to put forward, and as you know I prevented that from
occurring.

_____

(Id. at 5-6, 8) (emphasis added).

C.      Subsequent Procedural History

Sanders appealed from the judgment of conviction to the Appellate Division,

First Department, claiming that: (1) the People's evidence failed to prove his guilt beyond

a reasonable doubt because of the dramatic differences between the testimony of Isaac and

Anderson; (2) he was not provided with effective assistance of counsel because his trial

counsel "advised him not to testify;" (3) cumulative errors in the prosecutor's summation

deprived him of a fair trial; and (4) his sentence was excessive and harsh. (See Aff. of

Ass't District Att'y T. Charles Won, sworn to on Dec. 15, 2003 ("Won Aff."), Ex. 1

(Appellant's Br. on Appeal)).

On December 13, 2001, the Appellate Division unanimously affirmed

Sanders' conviction. See People v. Sanders, 735 N.Y.S.2d 24 (1st Dep't. 2001). In its

decision, insofar as relevant here, the Appellate Division held that Sanders'

> claim that his trial counsel's advice not to testify constituted
> ineffective assistance of counsel implicates strategic
> discussions between defendant and counsel that are dehors the
> record. Accordingly, this claim is unreviewable on direct
> appeal (see, People v. Love, 57 NY2d 998). To the extent the
> present record permits review, we conclude that defendant
> received meaningful representation . . . including sound advice
> not to testify.

Id.

On March 25, 2002, the New York Court of Appeals summarily denied

Sanders' application for leave to appeal from the decision of the Appellate Division.

People v. Sanders, 97 N.Y.2d 760 (2002). Sanders did not file a petition for a writ of

certiorari. (See Pet. ¶ 10(g)).

On or about March 1, 2001, Sanders filed a pro se motion to vacate his

judgment of conviction pursuant to Section 440.10 of the New York Criminal Procedure

Law ("CPL"). In that motion, Sanders claimed that his trial attorney provided ineffective

assistance, but for a reason different than the one advanced in this proceeding. Sanders

alleged that counsel had denied him the opportunity to accept a pre-indictment plea offer

involving a prison sentence of four and one-half to nine years. (See Won. Aff., Ex. 3).

Sanders' Section 440.10 motion apparently was denied on April 19, 2002, although neither the Court Clerk's office not the District Attorney's office has a copy of the decision. (Id. ¶ 9 & n.2). There also is nothing in the record to indicate when, if ever, notice of the entry of the April 19th order was served upon Sanders. Sanders' habeas petition nevertheless establishes that he eventually did receive notice of the denial of his Section 440.10 motion. (See Pet. ¶ 12(a)(6)). Despite having received such notice, Sanders never sought leave from the Appellate Division to appeal the denial of his motion before he instituted this proceeding.

D.    Habeas Petition

Sanders' pro se habeas petition, which is dated July 17, was received by the Pro Se Office of this Court on July 21, and later was filed on August 21, 2003. (See Pet. at 1). The sole ground for relief raised in the petition is that Sanders was denied the effective assistance of trial counsel, in violation of his Sixth Amendment rights, because he "strenuously voiced his desire to testify and present a defense, but his trial counsel prevented him from testifying." (Pet. ¶ 13).

III.    Discussion

A.    Standard of Review

A habeas corpus petition is not a vehicle to relitigate every issue previously determined in state court. Herrera v. Collins, 506 U.S. 390, 401 (1993). Instead, a state prisoner seeking habeas relief under § 2254 must show by a preponderance of the

evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petitioner thus has the burden of proving, by a preponderance of the evidence, that his rights have been violated. See Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997).

Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides, in part, that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d)(1) (emphasis added).

As the Second Circuit noted in Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000), the Supreme Court has "construed the amended statute so as to give independent meaning to 'contrary [to]' and 'unreasonable.'" "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause, a

federal habeas court should "ask whether the state court's application of clearly established

federal law was objectively unreasonable." Id. at 409.  This standard does not require that

reasonable jurists would all agree that the state court was wrong.  Id. at 409-10.  Rather,

the standard "falls somewhere between 'merely erroneous and unreasonable to all

reasonable jurists.'"  Stinson, 229 F.3d. at 119 (quoting Francis S. v. Stone, 221 F.3d 100,

109 (2d Cir. 2000)).

Section 2254(d)(2) also authorizes the federal courts to grant a habeas writ

when a claim considered on the merits in state court "resulted in a decision that was based

on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."

Finally, to the extent that a habeas petition challenges factual findings,

Section 2254(e)(1) provides that: "a determination of a factual issue by a State court shall

be presumed to be correct" and "[t]he [petitioner] shall have the burden of rebutting the

presumption of correctness by clear and convincing evidence."

"If, after carefully weighing all the reasons for accepting a state court's

judgment, a federal court is convinced that a prisoner's custody . . . violates the

Constitution, that independent judgment should prevail."  Williams, 529 U.S. at 389.

B.    Timeliness

The AEDPA imposes a one-year statute of limitations on habeas filings.  See

28 U.S.C. § 2241(d)(1).  Thus, a state prisoner ordinarily must commence his habeas

proceeding within one year of the latest of several triggering events.  Id.  In this case, the only applicable provision requires a petitioner to bring his petition within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  The Second Circuit has interpreted such "direct review" to include review by both the state courts and the United States Supreme Court "so that a petitioner's 'conviction bec[omes] final for [AEDPA] purposes when his time to seek direct review in the United States Supreme Court by writ of certiorari expire[s].'"  Williams v. Artuz, 237 F.3d 147, 150 (2d Cir. 2001) (quoting Ross v. Artuz, 150 F.3d 97, 98 (2d Cir. 1998)).  Sanders' conviction therefore became "final" on June 23, 2002, ninety days after the Court of Appeals' March 25, 2002 decision denying his application for leave to appeal from the First Department's affirmance of the judgment of conviction.  See S. Ct. R. 13.

        The AEDPA further provides for the tolling of the one-year limitations period during any time when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."        28 U.S.C. § 2244(d)(2).  By the date that Sanders' conviction became final, he had filed such an application, namely, his Section 440.10 motion, which was filed in early March 2001. Accordingly, Sanders is entitled to toll the statute of limitations for any period after June 23, 2002, during which his motion remained "pending."

There is some question whether a motion for collateral relief, once filed, tolls the AEDPA limitations period only from the date it is filed through the date it is decided or should, instead, be deemed "pending" until any further opportunity for appellate review is foreclosed.  See Duamutef v. Mazzuca, 2002 WL 413812, at *7 n.5 (S.D.N.Y. Mar. 15, 2002) (citing Bennett v. Artuz, 199 F.3d 116, 120 (2d Cir. 1999), and Hodge v. Greiner, 269 F.3d 104, 107 n.1 (2d Cir. 2001)).  The most favorable interpretation for Sanders would be that his motion remained pending until the deadline for filing an application for leave to appeal to the Appellate Division expired.

Pursuant to Section 460.10(1)(a) of the CPL, Sanders had thirty days after receiving notice of the entry of the order denying his motion in which to file such an appeal.  It is undisputed that the motion was denied on April 19, 2002, but the respondent has produced neither a record indicating that the court's order was entered, nor evidence that Sanders was given notice of entry.  Absent the service of notice of entry, however, Sanders' time to appeal would not have started to run.  See Matter of Gene DD, 602 N.Y.S.2d 705, 707 (3d Dep't 1993) (time to appeal "never began to run because respondent was not served with the order").

To be sure, Sanders had actual notice of the denial of his motion by the date he submitted his habeas petition.  (See Pet. ¶ 12(a)(6)).  Moreover, as the respondent accurately notes, Sanders affirmatively decided not to seek leave to appeal because he believed "that an appeal would have been futile."  (Id. ¶ 12(d)).  Nevertheless, there is no

11

reason for this Court to conclude, as the respondent suggests, that notice of entry of the

order denying Sanders' Section 440.10 motion must have been served by May 24, 2002.

(See Resp't's Mem. at 6).

       With respect to this issue, the respondent cites several tolling cases in an

effort to argue that it is Sanders' burden to establish that his petition is timely. (See id.).

However, this is not a case in which the statute of limitations has expired and the petitioner

belatedly seeks to toll its running. Here, the limitations period arguably never has run

because the notice of entry was not served. In such circumstances, it is the respondent's

burden to prove its affirmative statute of limitations defense. See Acosta v. Artuz, 221

F.3d 117, 121-22 (2d Cir. 2000). Since the respondent has failed to do so, the petition

must be deemed timely.

    C.    <u>Exhaustion</u>

       Sanders first raised his ineffectiveness claim arising out of Mr. Reyes'

alleged refusal to let him testify as part of his direct appeal. (See Won Aff., Ex. 1 at 8-11).

In his appellate brief, however, he presented facts concerning his discussions with counsel

and proposed defense which were not part of the trial record. (Id. at 10-11). Because

those facts could not be considered in connection with his direct appeal, the Appellate

Division found that his claim was unreviewable. People v. Sanders, 735 N.Y.S.2d at 24.

Thereafter, Sanders never sought further review in the state courts of his claim that Mr.

Reyes prevented him from testifying in support of a viable defense.

Under the AEDPA, a court may not grant a habeas writ unless it appears that the petitioner has exhausted all state court remedies, or there is an absence of state corrective process, or circumstances render that process ineffective to protect the petitioner's rights.  28 U.S.C. §§ 2254(b)(a)(A), (B).  To exhaust a claim prior to the filing of a habeas petition, the petitioner must present to the state court "both the factual and legal premises of the claim he asserts in federal court."  <u>Daye v. Att'y Gen.of New York</u>, 696 F.2d 186, 191 (2d Cir. 1982) (en banc).  Here, although the Appellate Division declined to go beyond the trial record as part of the direct appeal, Sanders could have brought a second Section 440.10 motion to give the state courts an opportunity to consider his unexhausted ineffective assistance claim.  While there is some risk that this claim might have been rejected on the ground that it could have been raised as part of his first Section 440.10 motion, there is no certainty that the state court would have exercised its discretion in that manner.  <u>See</u> CPL § 440.10(3)(c).  Accordingly, Sanders' present claim appears not to have been properly exhausted in state court.

The Court need not resolve the question of exhaustion in this case because Section 2254(b)(2) of Title 28 of the United States Code provides that a petition may be <u>denied</u> on the merits despite a petitioner's failure to exhaust all of the state court remedies available to him.  Thus, because there is no merit to Sanders' ineffective assistance claim, the Court can reach the merits of his claim.

D.    <u>Merits</u>

To secure habeas relief based on the ineffective assistance of his trial counsel, Sanders must show (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense."  Strickland v. Washington, 466 U.S. 668, 687 (1984). The first prong requires a petitioner to show that his counsel's performance was unreasonable "under prevailing professional norms."  Id. at 688.  In connection with this requirement, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.  To prevail on an ineffective assistance of counsel claim, a petitioner therefore "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  Id.  Additionally, to satisfy the prejudice prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

Moreover, when an ineffective assistance claim is raised in a habeas petition, the petitioner "must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under [28 U.S.C.] § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly."  Bell v. Cone, 535 U.S. 685, 698-99 (2002) (citing Williams, 529 U.S. at 411).  Rather, the petitioner must show that the state courts applied Strickland to the facts of his case in an objectively unreasonable manner.  Id. at 699.

In this case, Sanders contends that his attorney's refusal to permit him to testify at trial in spite of his expressed desire to do so amounts to reversible error in violation of petitioner's Sixth Amendment rights to effective assistance of counsel. Sanders avers that "[d]efense counsel told the petitioner that he should not take the stand, and when the petitioner reiterated his desire to do so, defense counsel overrode his desire and told him he could not do so."  (Pet'r's Mem. at 7).

A defendant in a criminal case has a constitutional right to testify on his own behalf.  See Rock v. Arkansas, 483 U.S. 44, 49-51 (1987).  Accordingly, a failure to advise a defendant of that right, or a decision not to call the defendant despite his stated desire to testify, constitutes deficient performance under Strickland.  See Rega v. United States, 263 F.3d 18, 21 (2d Cir. 2001) (criminal defendant has constitutional right to testify and duty of effective assistance includes advice concerning the exercise of that right); Brown v. Artuz, 124 F.3d 73, 77 (2d Cir. 1997) (defendant who wishes to testify must be permitted to do so, "regardless of strategic considerations that his lawyer concludes weigh against such a decision").

The trial record in this case is less than fully developed with respect to Sanders' attempted exercise of his Sixth Amendment right to testify.  Among other things, the record is silent as to whether Mr. Reyes ever informed Sanders that he had an absolute constitutional right to testify.  The record is also ambiguous as to whether Mr. Reyes simply strongly importuned Sanders not to testify or totally obstructed his ability to do so.

(Compare S. 6 (referring to a "strenuous recommendation") with id. at 8 (indicating that counsel "prevented that from occurring"). For present purposes, however, I will assume that Mr. Reyes violated Sanders' Sixth Amendment rights by categorically refusing to let him testify. See Strickland, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.")

As noted above, even if Mr. Reyes frustrated Sanders' exercise of his constitutional rights, to prevail on his ineffective assistance of counsel claim, Sanders still must show that there is a "reasonable probability that the verdict would have been different" but for his counsel's substandard performance. Brown, 124 F.3d at 80-81. In that regard, Sanders asserts in his memorandum of law that his testimony would have provided "both a motive and an explanation for his actions." (Pet'r's Mem. at 6). Sanders states further that "[h]is testimony was really the only significant defense he could present, and would have placed before the jury a justifiable reason why he **had to** stab the complaining witness that evening." (Id.) (emphasis in original).

According to Sanders, the assault upon Isaac arose out of a prior incident at Anderson's home. On the night before the assault, Sanders claims to have witnessed Isaac "masturbating over Antoine Anderson, Tanya Anderson's . . . son." (Won Aff., Ex. 2 at 19; see also S. 10). Sanders contends that he therefore threw back the $100 bill that Isaac had left for him on the bed because Sanders "contemplated turning Isaac in to the police" and the money was intended to "silence him." (Pet'r's Mem. at 6). Sanders also contends

that he would have testified that "Isaac had access to a gun which he kept in Anderson's bedroom drawer, and as Isaac began to go for the gun[, Sanders] stabbed him to save himself from being shot." (Id. at 7).

None of this proposed testimony gives rise to a reasonable probability that Sanders would have been acquitted. First, while the alleged incident involving Isaac and Anderson's son may have been marginally relevant to sentencing, it clearly did not give rise to a defense to any of the charges in the indictment.

A claim of self defense, on the other hand, can provide a justification for what might otherwise be considered a criminal assault. Thus, under New York law, a defendant can use deadly force to defend himself if, "among other things, (1) he subjectively believes that the use of deadly force is necessary, (2) a reasonable person in defendant's position would believe that the use of deadly force is necessary, and (3) the defendant does not 'know [] that he can with complete safety as to himself and others avoid the necessity of [using deadly force] by retreating.'" See Brown, 124 F.3d at 81 (quoting N.Y. Penal Law § 35.15(2)). Here, there is nothing in the record which indicates that Isaac was the initial aggressor or that Sanders, or anyone else, was in immediate physical danger when Sanders stabbed Isaac. In fact, since he fled from the apartment only a few moments later, it appears that Sanders' path out of the apartment would have been unimpeded had he chosen the course of flight over his decision to fight.

Additionally, there is no corroboration of Sanders' proposed testimony that Isaac

was reaching for a gun in a drawer. Indeed, at the time of his arrest, Sanders volunteered statements about the knife, but made no mention of a gun, much less that he had acted to save his own life. Also unexplained by Sanders testimony is why a steak knife was fortuitously present in the bedroom or bathroom at the time of the attack.

Sanders' version of events is also inconsistent with the statements that the two eyewitnesses testified he made at the time of the attack, telling Isaac that he was going to kill him because he had been disrespected and Marcus that he would be next if he persisted in his efforts to stop the attack.[2] (Tr. 60, 449). If Sanders were a victim, rather than the cause of, the altercation, one might also have expected that he, rather than Isaac, would have gone to the police once it was safe to do so. It also stretches credulity to suggest that Isaac and Sanders were sharing alcohol and drugs in a social setting prior to their altercation even though Sanders previously had told Isaac that he might report his criminal sexual abuse to the police.

In short, Sanders' proposed testimony fails to establish, as he must, that there was a reasonable probability that he would have been acquitted had Mr. Reyes acquiesced to Sanders' request to testify. Sanders therefore has failed to make the

---

[2]    The notion that Sanders might attack someone without provocation on a night when he had been using crack cocaine is not far-fetched. Although a jury might not have been permitted to hear testimony concerning a prior bad act, Justice Newman noted at the sentencing that her review of an "extremely detailed and . . . extensive" report by the probation department concerning a prior manslaughter conviction, arising out of the death of Sanders' brother, showed "parallels between [Sanders'] conduct on . . . April 16, 1997 [and what he] did . . . in the earlier case." (S. 10-11). In the earlier case, Sanders received an indeterminate sentence of ten to twenty years' imprisonment. (Id.).

showing required under <u>Strickland</u> to make out an ineffective assistance of counsel claim.

IV.     <u>Conclusion</u>

    For the foregoing reasons, Sanders' habeas petition should be denied. Furthermore, because Sanders has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253(c)(2), a certificate of appealability should not be issued.

V.     <u>Notice of Procedure for Filing of Objections to this Report and Recommendation</u>

    The parties shall have ten (10) days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  <u>See</u> <u>also</u> Fed. R. Civ. P. 6(a) and (e).  Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Shira A. Scheindlin and to my chambers at the United States Courthouse, 500 Pearl Street, New York, NY 10007, and to any opposing parties. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b).  Any requests for an extension of time for filing objections must be directed to Judge Scheindlin.  The failure to file these timely objections will result in a waiver of those objections for purposes of

appeal. See Thomas v. Arn, 474 U.S. 140 (1985); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

6(a), 6(e), 72(b).

Dated:    New York, New York
          February 15, 2006

                                        FRANK MAAS
                                 United States Magistrate Judge

Copies to:

Honorable Shira A. Scheindlin
United States District Judge

Chester Sanders #99-A-4513
Downstate Correctional Facility
Box F, Red Schoolhouse Road
Fishkill, New York 12524-0445

Joseph N. Ferdenzi, Esq./T. Charles Won, Esq.
Assistant District Attorneys
Bronx County
198 East 161st Street
Bronx, New York 10451
(718) 590-2156 (fax)